Good morning. We have four argued cases this morning. Two from the Veterans Court, one from the MSPB, and one from the PTO. The first case before the court, 14-7059 Lawson v. McDonald, Ms. Liddigson. Did I pronounce that? Okay. You want to reserve just two minutes for rebuttal? That's correct. Okay. You may proceed. May it please the court, the Veterans Court erred in remanding Mr. Lawson's case back to the agency without evaluating the merits of his claim for service-connected benefits prior to June 21, 2004, for two reasons. First, the court erred in remanding for a determination of whether or not Mr. Lawson in fact received notice of the February 5, 2003 rating decision when that inquiry is irrelevant under 38 U.S.C. Section 5104A. And second, the court erred in remanding the Q claim errors that Mr. Lawson raised before the Veterans Court and before the board without adjudicating the merits of those claims when resolution of the Q claim errors would entitle Mr. Lawson to benefits greater than what he would be entitled to based on resolution of the notice error. Is it your argument on the second point that resolution of the Q claim errors would actually moot the other question about whether he received notice? That is true, Your Honor, because the Q claim errors would entitle, if adjudicated in Mr. Lawson's favor, would entitle Mr. Lawson to benefits potentially back to September 1998 until June 21, 2004. It subsumes the period that would be covered under the notice error and thus it would be unnecessary to resolve the notice error if the Q claim errors were resolved in Mr. Lawson's favor. However, Mr. Lawson has a couple more steps in this case to get to benefits based on Q claim errors because the board found that he had not adequately raised Q. So he needs that decision reversed and then he also needs a decision on the merits of the Q claim errors. So he has potentially two visits back to the board before he can get resolution of that, whereas the notice error would entitle him to benefits based on resolution of just one error. Well, doesn't that actually cut against you in some ways? Because if he's still got two left, I mean, one of your arguments, I assume, is that veterans shouldn't be bounced back and forth. They shouldn't have to have all these remands. If the resolution of the Q claim error at best would allow a remand from the veterans court to assess again the question of whether he's properly raised it under the proper standard, doesn't that cut against the argument that we shouldn't be bouncing them back and forth? Well, the Q claim error should be resolved at the same time so that he has a chance of getting the resolution of that error sooner rather than later. It doesn't make sense to send him back to adjudicate a small portion of his claim for veterans benefits, specifically the portion from November 2002 until June 2004 when the Q claim errors would entitle him to a greater portion of the benefit. So even if he gets resolution of the notice error, he's still going to have to keep continuing with his claim. So making him go through three sets of remands potentially as opposed to two is harmful to Mr. Lawson. But whether to send him back or not is not based on what we think makes sense, correct? I'm sorry, Your Honor, I don't think that's... He said it makes no sense to do this. We're not here to determine whether he should go back or not go back on what we think is sensible. That's not the test, is it? Yes, Your Honor. But the statute, 38 U.S.C. section 7261, provides that the veterans court should decide those issues that are necessary to its decision. And here, in order for there to be a decision on the entirety of Mr. Lawson's claim, it is necessary to resolve and move the Q claim errors forward. Thus, Mr. Lawson should have received adjudication on those Q claim errors. And the resolution that you want or what you want the veterans court to decide is you want the veterans court to tell the board to apply a more lenient standard to a consideration of whether the Q claim was raised. Is that right? That's correct. Mr. Lawson is entitled to a liberal and sympathetic reading of his allegation of Q. And the board erred by not giving that reading to the submissions that Mr. Lawson submitted to the agency pro se. Well, back on the other issue, do you think that the nature of the remand would preclude the board from reconsidering that question? Judge Annalena, I'm not sure that it would necessarily preclude, but as a practical matter, the board is not going to change its adjudication of that question because the record is closed. The question of whether or not the papers Mr. Lawson submitted to the agency already sufficiently raised Q, that's based on the documents that are already before the board. So this is not a situation where on remand there's going to be new evidence or argument. It's already there. So what will happen under the current state of the veterans court's remand order is it's going to go back to the board for the notice error and nothing's going to change on the Q claim errors. Mr. Lawson is just going to get another denial. Then he's going to be back in the veterans court again. So you're saying the board is going to ignore the directive from the veterans court to consider the Q claim errors? Your Honor, my reading of the veterans court remand order is that the veterans court directs the board to allow new evidence on the matter remanded to A2 of the record. So I think the matter remanded is whether or not there was, in fact, notice under section 5104. So arguably, he does not have permission to bring up new evidence, even if there were new evidence and argument to be made. You understand I might not read it the same way you're reading it. It seems like to me that the remand is broader than you're reading it and directs them to consider those Q claim errors as well. Assuming that is the case, that the remand is broader. If you're telling me even if that's what the veterans court told them to do, they're going to basically... There's nothing that's going to change. The record's closed. They're going to ignore the directive and just give them the same result. That's... There will be the same result. Right. So the record is closed as to the Q claim errors. There's... As to whether he adequately raised Q in his... But the nature of the remand doesn't cause them to reopen the record. Or at least the record to be subject to being reopened. The veterans court's remand would permit reopening of the record. But typically, you have a case where there's a medical issue.  The issue is whether or not Mr. Lawson's pro se filings adequately raised Q. It's closed. There's nothing new to be added in terms of evidence or argument. Mr. Lawson just needs adjudication of whether or not the board erred in denying that he had adequately raised Q. And that's a decision that the veterans court is ultimately going to have to make. Whether it's on a remand from this court with a directive to the veterans court, or whether Mr. Lawson has to go back to the board and then back up to the veterans court. The issue is going to be the same, again, as to whether or not he adequately raised Q in his pro se filings. With respect to your first point, you argue that somehow there has been an adoption of this special rule that says that you could look to see actual notice even if there is concededly not notice. But try as I might, looking at the veterans court's decision, I don't necessarily see that. Couldn't you also read the veterans court's decision to simply address the dispute that the government claims is alive about whether there was notice? In other words, was it received by him in the mail? That is not the reading that I give to the veterans court decision, or that is correct to the veterans court decision. The veterans court stated that resolving whether Mr. Lawson in fact received notice of the denial of 2002 claim requires the remand. Not whether it was mailed to the correct address. In fact, before the agency, before the veterans court, the government did not allege that the mailing was sent to the correct address. There is no dispute that the address listed on A-682 of the record is not Mr. Lawson's address. The government says that it didn't dispute that point, but it did dispute whether or not it was received at the correct address. I understand your question, Your Honor. That is in effect, whether or not Mr. Lawson in fact received the notice. And that is not relevant under 38 U.S.C. Section 5104, because the statute requires that the notice be sent to the claimant's address of record. If you look at 38 U.S.C. Section 7104 and 7105, it states that the mailing date determines when the clock starts for the veteran to file his claim. Unless the notice is mailed to the correct address, the veteran is potentially shorted part of his time period to file a notice of disagreement to keep his claim alive. That's one of the problems with the agency's position is that somehow if he received actual notice, if somehow this got to him at a later date, that that cures the failure to provide because he is entitled to notice on a timely basis under the statute. And unless the agency sends the claimant his notice to the correct address, the rest of the statute starting the clock on that mailing date really isn't fair to the veteran and doesn't make sense within the statutory scheme. So if the last digit of the zip code is a four instead of a one, everything else is correct and he really gets it, you're saying that doesn't matter. It's not exactly perfect. Therefore, it wasn't adequately delivered under the statute. Is that your position? Your Honor, in this case, it wasn't adequately delivered because of the incorrect zip code. And when you look at his address, it's a P.O. box instead of a street address. This is not a case where potentially one digit off might have resulted in the mailman just delivering it to the correct address. It is an incorrect address. And the veteran and the system that's supposed to give the benefit of the doubt to the veteran should be given the benefit of the doubt that he did not receive the notice. Normally, what the agency relies on in showing that a veteran received notice is the presumption of regularity in mailing. And given the incorrect address here, that presumption is gone. And there's not really anything that the agency can do to rebut or to restore that presumption given the fact that Mr. Lawson has stated that he didn't receive the notice. So does that answer your question? I'm sorry. I'd like to turn to the jurisdictional issue on the notice question briefly. Here, there is jurisdiction under Williams v. Principi over the remand order of the Veterans Court. The remand order here meets all three of the Williams criteria. First, that there is a clear and final issue or final decision on a legal issue. That if reversed by the court, would render the remand proceedings unnecessary. So here, the question of whether or not Section 5104A requires that the claimant be provided actual notice to his last address of record, if decided in Mr. Lawson's favor, would move the need for a remand. The second Williams criterion requires that the resolution of the legal issues must adversely affect the party seeking review. Here, the resolution of whether or not Mr. Lawson received in fact notice would adversely affect Mr. Lawson in at least two respects. The first is that if the board, if in fact notice is found relevant under Section 5104, and the board determines that Mr. Lawson did in fact receive notice, it would result in him not receiving benefits for the time period from November 8, 2002, until June 21, 2004. And then in addition, being subjected to the unnecessary proceedings, additional proceedings on the notice issue, and the delay incumbent in that is also an independent harm to Mr. Lawson that's caused by the error in the statutory interpretation. And then the third and final Williams criterion requires that there must be a substantial risk that the decision would not survive remand. And here, that is the case because first, if the board does make a finding that Mr. Lawson, in fact, did not receive the notice, the legal issue becomes moot. But also, because of the separate Q claim errors, which encompass his claim for benefits for the greater time period, if the case goes back to the board, and then back to the Veterans Court, and the Veterans Court ultimately finds for Mr. Lawson on the Q claim errors, it would render the notice issue moot. So if we disagreed with you on the notice question, but agreed with you that the court should have addressed whether or not the Q claim needs to be remanded as well, would, what would our directive to the Veterans Court be? The court would vacate and remand to the Veterans Court with instructions to evaluate the merits of Mr. Lawson's claim that the board erred in finding that he had failed to sufficiently plead a Q error. Okay, you're into your rebuttal time. You want to? Yes. Okay, you may begin. Thank you. May it please the court, I'll address both of Mr. Lawson's arguments, but I'd like to start with the notice issue. On this issue, the court has recognized that, typically, observe a strict rule of finality and will not review remand orders at the Veterans Court. Although the court has carved out a narrow exception in Williams, this notice issue does not meet that test. Well, if it's in fact true that there can't be any resolution of the remand that's not, you know, that wouldn't have to later be set aside because it was legally an inappropriate conclusion, then of course we wouldn't just approve a remand, right? That is true. Again, here with the notice issue, I don't think that's the case because the Veterans Court did not reach a clear and final decision on a legal issue. Mr. Lawson has characterized the Veterans Court's decision as interpreting 38 U.S.C. 5104, but as the court has recognized, interpretation requires some elaboration on the meaning of a statute. At most, this was application of lot of fact, which of course is not interpretation. Your advantage here is that we, I think, properly interpret 7292 very strongly in your favor on questions of fact. What's your disadvantage is that I have no question that if a letter is mailed to a post office box, and it's sent to the wrong zip code, that it goes to an entirely different post office, and the postal clerk then inserts that in the box, proper box number, and it's misdelivered. That's a matter of fact, and I think we can take judicial notice of that. How do you deal with that, and how do we deal with it when we know you're wrong, and yet we have this standard of review? I think there are really two problems to that. The first is that Mr. Lawson raised his notice issue for the first time before the Veterans Court, and the Veterans Court recognized that it is prohibited by statute for making factual determinations in the first instance, and that the proper thing to do to resolve this issue was to remand it to the board, even if ultimately it is determined to be in Mr. Lawson's favor. I apologize, I thought I was going to make two points about that, but I think I've lost the thread of the subject. I don't really understand what the government's position is on this factual thing. I mean, you said at one point, well, we disagree that he didn't get the mailing, and then you later admit that it was sent to the wrong zip code.   So how can you disagree that he didn't get the mailing, if you admit it was sent to the wrong zip code? Thank you, Your Honor. This actually brings in the second point I was going to make in response to Judge Wallach. The presumption of irregularity can, of course, be rebutted, but that's just the first prong of the inquiry, because although the Veterans Court decision does not get into the issue of actual notice, it is, in fact, right that actual notice can remedy a notice error problem, and Mr. Lawson has mischaracterized this as being that that prejudices the veteran, because then their time for filing a notice of appeal has been told, and they don't get the benefit of that time. But in fact, there's well-developed case law that states that if there's a cure of a notice issue, then the time for appeal is triggered by the date of actual receipt. Again, also, what's that? I don't know how you define cure. In other words, you concede, don't you, that if the notice goes to the VA representative, that that doesn't count, right? Yes. This is a hypothetical, but perhaps there could be an issue where the veteran calls the VA and says, I didn't get the letter, and then it's resent. Or here, there could also be the veteran's court correctly noted that if it didn't take exercise of jurisdiction to hear the notice argument, that Mr. Lawson would not be able to bring that up again as a freestanding claim from an earlier effective date. And that's in line with the court's implicit denial rule. So although even if it's ultimately determined that Mr. Lawson did not receive notice of the denial of the 2002 claim, once he received denial of the exact same claim, or excuse me, once he was granted service connection and an effective date on his 2004 claim, that is notice that his earlier claim was being denied. And to the extent that he has an issue with his effective date, it is the only possible way for him to challenge that and develop more evidence would be in this current claim stream. Let me ask you this, counsel. I spent a lot of time trying to understand this chart from the briefing. And how can anybody look at this and not conclude that this veteran has been bounced back and forth more times than the basketball between Wisconsin and Duke? And why is that fair in any sense of the word? Your Honor, I think that everyone recognizes that in a perfect world, there would be sufficient evidence to get every termination right the first time. Here, Mr. Lawson submitted multiple claims, but based on medical reviews, there was not a sufficient connection to grant service connection. And it's really in Mr. Lawson's favor that ultimately that was found. But he can challenge those earlier determinations on the basis of cue. So this is in his favor? This is what he would like to have happen to him, right? No, I don't think that's the case. However, it wouldn't be in Mr. Lawson's favor if after receiving a denial of his 1988 claim, he was not able to reopen a claim based on new immaterial evidence. That would be not to his benefit. He would have resolution earlier, which may be an advantage, but I think that everyone agrees that to the extent that someone can later meet the criteria for service connection, it's better to give them the opportunity to reopen their claims. We have to concede that if, in fact, he was able to prevail on a cue claim, that this whole issue of notice or actual notice and the interpretation of the applicable statutes and regs becomes moot, right? Because he goes all the way back. It could be. However, Mr. Lawson would lose his ability to develop his notice argument without remand. So the most that the Veterans Court could have done on his cue claim errors was issue a remand to the board. And in fact, that's what Mr. Lawson asked for regarding both of his arguments before the Veterans Court was a remand. Right, but the point is, what he asked for is, even if you have to remand my notice claim, remand the cue claim with direction to consider it again under the appropriate standard of review. And as the court noted, the remand is broader than Mr. Lawson is contending. The Veterans Court specifically cited K.E.V. Principe for the point that he would be free to submit additional arguments and evidence as to the remanded matter, and that would also include cue claims. Here, the cue issue was that the board found that he had not yet raised a valid cue claim. So he's able to better develop that when he returns to the board. And so government is going to concede before the board that the remand includes a full open re-evaluation of whether he's properly raised a cue claim? Yes, however, if the Veterans Court were to have reached the merits on this, it would have been correct to affirm the board on this that he had not actually raised a cue claim. Mr. Lawson made a statement in his current claim stream after receiving the notice of his service connection. He stated, I am challenging the effective date based on clear error. Oh, but that's not the merits of that. It's not for us. The question is whether the Veterans Court should have addressed it. Let me finish. The question is whether the Veterans Court should have addressed it to avoid the kind of bouncing back and forth and unnecessary remands that Judge Gilstrap mentioned. The most that the Veterans Court could have done for him was to say that the board was correct in finding that he had not raised a valid cue claim. What would really be to Mr. Lawson's detriment was if here it was found that he had made a cue claim to a final board decision and not succeeded on that challenge, then he wouldn't be able to make additional arguments on that. Wait, wait, wait. That doesn't even make any sense. Well, the only question before the Veterans Court was whether he had ever raised it. And the Veterans Court found that he did. The Veterans Court couldn't then go to the merits. No, of course not. No, of course not. However, the board's finding that he hadn't raised a valid cue claim allows him to perfect his cue claim and describe... He hadn't even identified a final RO or board decision that he thought that there was a cue in. This gives him an opportunity to do that. Rather than simply denying a cue claim, which wouldn't have been appropriate for the board to do because it's not even clear what decision he's alleging cue to be in. So the government wouldn't even say on remand that he would have to file a new cue claim? They'd say that he could proceed on this claim and develop it better? Yes, he's entitled to review before the RO, but if he wanted to waive that and develop his cue claims for the board, he would be entitled to do that. And the government wouldn't dispute that entitlement? No. Okay, go ahead. I will just briefly state that to the extent that the court agrees that there is jurisdiction over the second argument on the cue claim, the court should affirm the Veterans Court's principle of... That once it determines that a remand is the proper remedy, it need not analyze and discuss all of the other claimed errors that would result in a remedy no broader than a remand. This is a principle of judicial efficiency and given the broad nature of remands in the Veterans Court that applies to this case, but also to cases generally that enable a veteran to supply additional evidence to the board and refine their arguments, the mall principle should be affirmed. If the court has no further questions, we ask that the court dismiss for lack of jurisdiction the notice issue and affirm on the cue claim. And as argued today and in our brief. Thank you. Thank you. The government referenced the mall principle, which comes from the case of Malby-Principe before the Veterans Court. That case is not only not binding on this court, but it is inapplicable because in mall, there was no dispute that the veteran in that case, the second error that he alleged would not have entitled him to a remedy greater than the error on which there was a remand. Here, Mr. Lawson's cue claim errors entitle him, if adjudicated in his favor, to benefits that date back to 1998 and include the same period as the notice error. Therefore, the principle of mall, even if it is valid, does not apply in this case. Well, even if we agree with that, what if we hold the government to their concession and say that the remand is broad enough to include full development of the cue claim in this matter and that to the extent that there's any question about whether it was properly raised, any arguments that need to be made can be made right now before the board? Doesn't that give him what he wants? Mr. Lawson certainly would make every attempt if there was a remand that would allow him to reopen and further develop his cue claim errors to do so. However, given the fact that the issue that was currently before the board is whether or not he sufficiently fled cue, there's not really much that can be added to the record here. The RO decisions, the board decisions, they're all in the record. So there won't be any new evidence and likely not new argument. So although in theory there may be some ability to develop the claim, the reality is that given the nature of where the cue claim errors stand in this case, there is not. In other words, you told us to begin with that we shouldn't send this back because the record would be closed. It couldn't be reopened. He wouldn't have a fair chance to have another bite at the apple, if you will. Yes. The government comes up here and says, no, the record will be open. It will be broad enough. And then you come back and say, that's still not good enough. Right. Because of the nature of why the cue claim errors were denied in this case, there's not anything that can be added to the record that would help Mr. Lawson further develop those claims on a remand. Why didn't you tell us that the first time? Sorry, Your Honor. May I briefly conclude? Yes. For the four main reasons, Mr. Lawson respectfully requests that the court, direct the Veterans Court to vacate the remand order and direct them to enter judgment in Mr. Lawson's favor as to the notice error and to instruct them to resolve the merits of the cue claim errors as they were presented before the Veterans Court.  Okay. Thank you. The case will be submitted.